[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14513
Non-Argument Calendar
_____

D.C. Docket No. 1:08-cr-20231-PCH-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PEDRO GALLEGO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 10, 2018)

Before WILLIAM PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Pedro Gallego appeals the district court's denial of his motion to compel the government to file a motion to reduce his sentence for substantial assistance under Federal Rule of Criminal Procedure 35(b)(2). He argues the government's reasons for refusing to file a Rule 35 motion were not rationally related to a legitimate government interest and were in breach of his orally modified plea agreement with the government. He seeks remand so the district court can conduct an evidentiary hearing. After careful review, we affirm the district court.[1]

## I.

The parties tell us that in early 2008, Gallego was kidnapped by Roberto Garcia in retaliation for Gallego robbing a drug stash house. At some point, Gallego was able to call his cousin to help him escape. But when Gallego's cousin arrived, Garcia murdered him. The record does not make clear how, but Gallego was able to escape from Garcia. Shortly after, he gave a witness statement to Florida law enforcement about his kidnapping and the murder of his cousin.

Around this same time, the federal government was investigating Gallego. In March 2008, a federal grand jury issued a seven-count indictment, charging Gallego with, among other things, conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 ("Count One");

---

[1] Gallego filed two unopposed motions to supplement the record. Because the material will aid this Court in making an informed decision, his motions are GRANTED. See Schwartz v. Million Air, Inc., 341 F.3d 1220, 1225 n.4 (11th Cir. 2003).

2

conspiracy to commit robbery, in violation of 18 U.S.C. § 1951(a) ("Count Three"); and use and possession of a firearm in connection with a crime of violence and drug trafficking crime, in violation of 21 U.S.C. § 846 and 18 U.S.C. §§ 924(c)(1)(A), (2), 1951(a) ("Count Six").  Pursuant to a written plea agreement, Gallego pled guilty to Counts One, Three, and Six of the indictment in return for the dismissal of the other four counts.  The plea agreement stated, "[i]f in the sole and unreviewable judgment of [the government] [Gallego's] cooperation [was] of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the court's downward departure from the advisory sentence calculated under the Sentencing Guidelines," the government may file a Rule 35 motion recommending that Gallego's sentence be reduced.  The plea agreement also set out Gallego's agreement that the government was not required to file a Rule 35 motion, and that there were "no other agreements, promises, representations, or understandings."  The district court accepted Gallego's guilty plea.

At the 2008 sentencing hearing, the government moved for a 25 percent reduction to Gallego's sentence for substantial assistance based on his testimony against his codefendants.  The district court granted the motion and sentenced Gallego to 180-months imprisonment followed by five years of supervised release.

3

In 2017, Gallego filed a pro se motion to compel the government to file a Rule 35 motion. In his motion, Gallego said he provided information to law enforcement that resulted in the arrest of Garcia and ultimately led to his indictment and guilty plea. Gallego said he provided this information after making a verbal agreement with the government that they would file a Rule 35 motion in exchange for his assistance. Gallego says the government violated the terms of this oral agreement. Gallego asked the district court to require the government to reduce his sentence by 33 percent and schedule an evidentiary hearing.[2] The government opposed the motion and filed a notice of its decision to not file a Rule 35 motion.

The district court adopted the magistrate judge's recommendation to deny Gallego's motion, and this appeal followed.

## II.

We review de novo whether the district court may compel the government to make a substantial assistance motion. See United States v. Forney, 9 F.3d 1492, 1498 (11th Cir. 1993) (reviewing de novo a district court's refusal to depart downward in the absence of a USSG § 5K1.1 motion by the government); United States v. Mahique, 150 F.3d 1330, 1332 (11th Cir. 1998) (per curiam) (reviewing de novo the question of whether the government has breached a plea agreement).

---

[2] Gallego filed his motion pro se, but subsequent briefing was handled by attorneys from the Federal Public Defender's Office, who continue to represent him on appeal.

III.

Federal Rule of Criminal Procedure 35(b)(2) governs motions for a sentence reduction made more than one year after the defendant was sentenced.  Broadly, this rule allows the district court to reduce a defendant's sentence if he provided "substantial assistance" in investigating or prosecuting another person.  Fed. R. Crim. P. 35(b)(2).  Because district courts can only reduce a defendant's sentence for substantial assistance based on a request from the government, see id., Rule 35(b) reflects a "broad grant of prosecutorial discretion."  United States v. McNeese, 547 F.3d 1307, 1309 (11th Cir. 2008) (per curiam) (quotation omitted).

There are, however, two limits on the government's discretion.  First, courts may compel the filing of a Rule 35 motion if the government promised as part of a plea agreement that it would file one.  See United States v. Gonsalves, 121 F.3d 1416, 1419 (11th Cir. 1997).  Second, the refusal to file a substantial assistance motion is subject to judicial review if it is based on an unconstitutional motive, such as the defendant's race or religion, or is not rationally related to any legitimate government end.  Wade v. United States, 504 U.S. 181, 185–86, 112 S. Ct. 1840, 1843–44 (1992) (discussing motions under United States Sentencing Guidelines § 5K1.1); see McNeese, 547 F.3d at 1309 (extending Wade to Rule 35(b) motions).  Gallego argues that either of these rationales supports compelling the government to file a Rule 35 motion in this case.

5

Gallego concedes his plea agreement contains clear language leaving the filing of a Rule 35 motion to the government's discretion.  But Gallego argues the government orally modified this agreement during a January 2015 phone call with defense counsel by saying a Rule 35 motion was "not yet ripe" because Garcia's trial had not yet happened.  In June, Gallego's counsel emailed an Assistant United States Attorney ("AUSA"), stating:

> We last spoke on [January 21, 2015], at which time you advised that the [Rule 35 motion] was not yet ripe because Mr. Gallego hadn't testified in the state murder case.  The case has now concluded. . . .
>
> Please let me know how your office will proceed, or if another AUSA is handling, please let me know.

The AUSA replied that the case had been transferred to another AUSA.  In his reply, he neither adopted nor disputed Gallego's counsel's recollection of the conversation.

The government and Gallego have different interpretations of what "not yet ripe" means.  Gallego contends the government's statement that the motion was "not yet ripe" was an implied promise that it <u>would</u> be ripe after the conclusion of Florida's case against Garcia and that the government <u>would</u> file that motion.  In the government's view, at most "not yet ripe" means that if the government "were to consider filing a Rule 35(b) motion for Gallego," the time to consider that "would be after Gallego had testified in the state murder case."

6

Even accepting there is some ambiguity in the statement "not yet ripe," those words do not reflect a promise that the government will file a Rule 35(b) motion. The more natural understanding is that the government's decision on whether to file a motion would wait until after the close of the case against Garcia. The cases cited by Gallego are distinguishable as each involves a firm commitment by the government to move for a sentence reduction or to consider moving for one in good faith. See United States v. Wilson, 390 F.3d 1003, 1011 (7th Cir. 2004) (noting "district court expressly found that the government had promised Wilson that it would act in good faith [in considering filing a Rule 35 motion] if he withdrew his own motion for a downward departure"); United States v. Martin, 25 F.3d 211, 217 (4th Cir. 1994) (finding a promise by the government where it indicated at sentencing that it "intended to make a substantial assistance motion within the next year" (quotation omitted)).

Turning to the constitutional limits recognized in Wade, Gallego argues the government's refusal to file a Rule 35 motion was not rationally related to a legitimate government purpose. See Wade, 504 U.S. at 186, 112 S. Ct. at 1844. In its notice that it would not file a Rule 35 motion, the government said its reasons for not filing were because Gallego assisted Florida's investigation of Garcia based on his status as the crime's victim and that "as a general matter" the government "would not file a Rule 35 motion in those circumstances." The government also

7

decided not to file a Rule 35 motion because Gallego began cooperating with Florida's investigation of Garcia "before he committed the very serious crimes that were the subject of" its case against him.

The government has given its reasons for refusing to file a Rule 35 motion, and Gallego has made no substantial showing that the government's decision was based on illegitimate reasons or unconstitutional motives.  See id.  Because Gallego failed to make a substantial showing, the district court did not err in denying his motion to compel the government to file a Rule 35 motion without an evidentiary hearing.

**AFFIRMED.**

8